## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NATALIE WILLINGHAM, individually, and on behalf of all others similarly situated, | CASE NO.: 1:12-cv-01157-RWS-JFK |
| | CLASS ACTION |
| *Plaintiff*, | JURY TRIAL DEMANDED |
| v. | |
| GLOBAL PAYMENTS INC., | |
| *Defendant*. | |

## DEFENDANT GLOBAL PAYMENTS INC.'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Global Payments Inc. ("GP") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss. As set forth more fully herein, Plaintiff lacks standing to assert her claims, and her Complaint fails to state a single cognizable cause of action against GP. GP's Motion to Dismiss should be granted.

## INTRODUCTION

Plaintiff asserts a host of claims against GP, each arising from a data theft that the Company announced in March 2012. Plaintiff bases her claim that she was impacted by that data theft on a daisy chain of assumptions and inferences rather than cold, hard facts. Most glaringly, Plaintiff does not allege any basis for

concluding that her data was compromised in the theft.  Indeed, Plaintiff does not even allege that she made a credit card purchase from a merchant that uses GP to process its credit card transactions.   Put simply, Plaintiff has not provided the Court with any basis whatsoever for inferring that GP even had Plaintiff's data in its possession to be compromised at the time of the data theft at issue.

All of Plaintiff's claims must fail.  As a preliminary matter, each and every claim Plaintiff asserts must be dismissed because Plaintiff has not alleged the necessary causation or injury-in-fact to have standing.  Moreover:

- Plaintiff's statutory claims must be dismissed because the statutes Plaintiff sues under either do not apply to GP (in the case of the Stored Communications Act ("SCA") and the Fair Credit Reporting Act ("FCRA")), do not apply to Plaintiff (in the case of Georgia's Unfair and Deceptive Trade Practices Act ("UDTPA")), or do not prohibit the alleged conduct (SCA and FCRA);

- Plaintiff's tort-based based claim also fails.  Plaintiff cannot state a claim for negligence when there is no connection between her and GP, and GP owed her no duty of care; and

- Plaintiff's contract-based claims likewise fail.  Plaintiff does not allege any actual contract with GP.  Instead, she asks the Court to allow her to sue under unidentified contracts to which she is not a party or to imply a contract that does not exist.  Plaintiff's breach of third-beneficiary contract claim must be dismissed because Plaintiff has not alleged that the parties to the alleged but unidentified third-party contract intended her to be a beneficiary to that contract.  Plaintiff's breach of implied contract claim likewise must be dismissed because she does not allege that she and GP ever reached an agreement with each other or otherwise had a meeting of the minds.

## COMPLAINT ALLEGATIONS

GP provides payment processing services for credit cards issued to cardholders by issuing banks.  (*See* Compl. ¶¶ 2, 18).  Plaintiff is a resident of Kansas who holds a "Visa branded credit card issued by Bank of America."  (*Id.* ¶¶ 13, 28).  Plaintiff does not allege that she has any contract or relationship with GP. Rather she alleges that GP has contracts "with retailers to handle the processing of card transactions . . . ."  (*Id.* ¶ 18).  Plaintiff alleges that GP's role in the processing of card transactions is as follows: "The retailer sends the consumer's information to the merchant acquirer, such as Global Payments, who then forwards that information to Visa, MasterCard, or another issuer, who clears the transaction with the consumer's bank."  (*Id.*).

Although GP does not provide cards to cardholders and has no relationship with cardholders, GP does, to the extent necessary to provide payment processing services, maintain cardholder Personally Identifiable Information ("PII").  (*See id.* ¶ 3).  In March 2012, GP acknowledged that unauthorized third parties had gained access into "a portion of its processing system."  (*Id.* ¶ 25).  As a result, the security of certain limited cardholder information was compromised.  (*Id.* ¶ 27).

GP promptly notified law enforcement and appropriate industry parties, "to allow them to minimize cardholder impact."  (*See id.* ¶¶ 3, 4).  On March 30, 2012, GP released a public statement disclosing the unauthorized access, and, on April 2, 2012, held an investor conference call and created a publicly available website to

provide information regarding the unauthorized access.  (*See id*. ¶¶ 4, 5, 27).  GP's statements indicated its belief that the cardholder information exported by the unauthorized third parties did not include cardholder names or social security numbers.  (*Id*. ¶ 27).  Plaintiff bases her claims in this lawsuit on GP's public disclosures as well as other media attention and press releases.  (*Id*. ¶¶ 3-8, 23-27).

Plaintiff alleges that, in or about mid-March 2012, she discovered fraudulent charges to her Bank of America Visa card.  (*Id*. ¶ 29).  Plaintiff does not allege whether she reported these charges as fraudulent or whether she was ultimately required to pay them.  Plaintiff also does not allege that she made any payments from a merchant that uses GP to process its credit card transactions.  Plaintiff simply alleges that – based solely on the "timing of the fraudulent activity" – she "believes" these charges were the result of the data theft experienced by GP, (*Id*. ¶ 30), and asserts claims against GP for: negligence; violation of the Stored Communications Act, 18 U.S.C. § 2702; willful and negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.; violation of Georgia's Unfair and Deceptive Trade Practices Act, O.C.G.A. § 10-1-372; negligence per se; breach of third party beneficiary contract; and breach of implied contract.  Plaintiff also seeks to represent a nationwide putative class.  (*See id*. ¶ 33).

## ARGUMENT AND CITATION OF AUTHORITY

### I. Plaintiff Lacks Standing, And Her Claims Must Be Dismissed Under Rule 12(b)(1).

When faced with a facial attack on standing under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that standing exists. *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009). "Each element of standing must be supported in the same manner as any other matter on which the plaintiff bears the burden of proof." *Id.* As the Eleventh Circuit has explained, "[t]he standing inquiry 'requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

This case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff has failed to plead facts sufficient to establish standing as required by Article III, Section 2 of the U.S. Constitution. "[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quoting *Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000)). The standing doctrine requires Plaintiff to allege: (i) injury-in-fact; (ii) a causal connection between the injury and the conduct complained of; and (iii) that the injury is likely to be redressed by the requested relief. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998).

"The plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy" Article III's standing requirements, and the Court "should not speculate concerning the existence of standing. . . ." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229-30 (11th Cir. 2000) (internal quotation marks omitted).  In a putative class action, the named Plaintiff *herself* must satisfy all of the requirements of standing.  *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987).[1]  Plaintiff has failed to establish Article III standing, and all of her claims must be dismissed.

    A.    <u>Plaintiff has not alleged that GP *caused* her alleged injuries.</u>

First and foremost, Plaintiff lacks standing because she has not alleged any facts that, when taken as true, establish any causal connection between the GP data theft and Plaintiff's alleged injuries.  To satisfy the requirements of Article III standing, Plaintiff must allege that there is a causal connection between any alleged injury-in-fact and the conduct of which Plaintiff complains.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  Specifically, the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Furthermore, the

---

[1] Despite this clear requirement, the Complaint regularly conflates alleged injuries of the named Plaintiff and those of members of the purported class.  (*See, e.g.*, Compl. ¶¶ 58, 71, 111).  This Memorandum focuses on only those allegations specifically related to the named Plaintiff inasmuch as those are the only relevant allegations at this pre-certification stage.

"causal connection cannot be too attenuated." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1274 (11th Cir. 2001). In this case, Plaintiff asks the Court to build inference upon inference to find a causal connection.

Plaintiff alleges that she has a Visa branded credit card issued by Bank of America and that fraudulent charges occurred on that card. (Compl. ¶ 29). Plaintiff then jumps to the conclusion that "[b]ased on the timing of the fraudulent activity . . . [she] believes that her PII was compromised" by GP. (*Id.* ¶ 30). These allegations are the sum total of Plaintiff's efforts to allege causation. But, a coincidence in timing does not a causal connection make. The law requires more.

Federal courts consistently have rejected the notion that a mere temporal connection between events is sufficient to establish causation. *See, e.g., Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1254 (11th Cir. 2010) ("Temporal proximity is generally not a reliable indicator of a causal relationship."); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999) ("[T]he mere fact that two events correspond in time does not mean that the two necessarily are related in any causative fashion."). Thus, in order to meet the causation requirement, Plaintiff must allege facts demonstrating "that the injury is indeed fairly traceable to the defendant's acts or omissions." *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977).

Plaintiff has not alleged any facts showing that her alleged injury is fairly traceable to GP's conduct. As a preliminary matter, Plaintiff does not even allege

that her PII was compromised in the data breach that GP experienced.  Indeed, Plaintiff does not allege that she ever made a credit card purchase from a merchant that uses GP to process its credit card transactions (meaning that Plaintiff has not even alleged any facts showing that GP had any of Plaintiff's PII at the time of the theft).  Plaintiff also does not allege that the fraudulent charges on her card in fact resulted from the data breach that GP experienced.  Nevertheless, Plaintiff asks the Court to assume that the data breach was the cause of alleged fraudulent activity on her credit card simply as a result of the timing of the credit card charges.

Other courts have refused to make this leap, and this Court should do the same.  For example, in *Hammond v. Bank of New York Mellon Corp.*, the court found that the plaintiffs failed to allege sufficiently any fraud that was causally connected to the loss of the data tapes at issue in the case.  No. 08-CIV-6060, 2010 WL 2643307, at *13 (S.D.N.Y. June 25, 2010).  And, in data breach cases where standing has been found, plaintiffs had more than speculation upon which to base their claims.  *See Lambert v. Hartman,* 517 F.3d 433, 438 (6th Cir. 2008).  In *Lambert*, the court found that the plaintiff had satisfied standing requirements where she "was able to link the act of identity theft to the personal information that was [improperly] made available. . . ."  *Id*.  Specifically, the *Lambert* plaintiff showed that an erroneous driver's license number in the system that had been compromised was identical to the driver's license number on fake identification used to make fraudulent purchases in her name.  *Id*.  Moreover, the individual who

committed identity theft confessed to accessing the plaintiff's information via the compromised data system. *Id.* Plaintiff does not allege any facts in the Complaint that would come close to proving this sort of connection between GP's alleged conduct and her injury. Her claims must be dismissed.

        B.    <u>Plaintiff has not alleged an injury-in-fact.</u>

"Injury in fact" exists where a plaintiff has suffered an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal citations and quotation marks omitted). It is not enough that a complaint "sets forth facts from which [the Court] could imagine an injury sufficient to satisfy Article III's standing requirements. . . ." *Miccosukee Tribe of Indians of Fla.*, 226 F.3d at 1229. Furthermore, the mere possibility of future injury is not enough to establish standing. *Bowen v. First Family Fin. Servs.*, 233 F.3d 1331, 1340 (11th Cir. 2000). Rather, Plaintiff must allege injuries that are "actual" or "certainly impending." *Lujan*, 504 U.S. at 563 n.2. Plaintiff has not done so, and her claims must be dismissed.

Although Plaintiff makes several generalized assertions of categories of damages she seeks, there is only one specific, factual allegation in the Complaint as to an injury Plaintiff claims to have suffered – that is Plaintiff's allegation that she suffered "fraudulent charges in the approximate amounts of $600 and $300." (Compl. ¶ 29). But Plaintiff has not alleged that she actually paid for the

fraudulent charges as opposed to having them removed or reimbursed by her credit card issuer.  This is a key deficiency in the Complaint because courts have held that allegations of fraudulent charges that were ultimately reimbursed are not sufficient to constitute an injury-in-fact.  *See* Order at 9, *Irwin v. RBS WorldPay, Inc.*, No. 1:09-cv-00033-CAP (N.D. Ga. Feb. 5, 2010) (attached hereto as Ex. A) (plaintiff did not establish injury-in-fact when unknown charge on her credit card was ultimately removed by bank); *see also Hammond*, 2010 WL 2643307, at *8; *see generally Troiano v. Lepore*, No. 03-CV-80097, 2003 WL 24832863, at *4 (S.D. Fla. Nov. 3, 2003) (plaintiffs did not show an injury-in-fact because their alleged injury had been remedied before lawsuit).  It is Plaintiff's duty to establish that she has standing to bring her claims.  *Lujan*, 504 U.S. at 561.  Because Plaintiff failed to plead facts essential to the question of whether she suffered actual pecuniary loss as a result of the alleged fraudulent credit card charges, Plaintiff has failed to carry that burden.

Plaintiff's generalized claims of other alleged injuries – without any factual support – are not sufficient to carry her burden under *Iqbal* and *Twombly*.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (complaint must include more than "naked assertion[s]" devoid of "further factual enhancement" in order to satisfy federal pleading standards); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[2]

---

[2] Plaintiff lists a number of vague categories of damages that she "and the class" collectively purportedly incurred.  (*See* Compl. ¶ 58).  But she does not include any factual allegations showing that Plaintiff herself incurred those damages, and that

Moreover, even if Plaintiff's vague allegations suffice (and they do not), the types of injuries she alleges are not cognizable for the claims she asserts. *See, e.g., Order at 8, 11-12 RBS WorldPay, Inc.*, No. 1:09-cv-00033-CAP (attached hereto as Ex. A) (stating that "the mere exposure of [PII] is not sufficient to constitute actual injury for purposes of Article III standing" where plaintiff had failed to adequately allege that she had been the victim of identity theft, and her risk of future identity theft and the expenses associated with mitigation efforts to prevent future identity theft did not constitute an injury-in-fact); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("[T]here is absolutely no support for the proposition that the personal information of an individual JetBlue passenger had any value for which that passenger could have expected to be compensated . . . .  There is likewise no support for the proposition that an individual passenger's personal information has or had any compensable value in the economy at large."); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44-45 (3d Cir. 2011) (alleged "emotional distress" was insufficient to constitute injury-in-fact in a data breach case); *see also Hammond*, 2010 WL 2643307, at *7-8, 11 (finding no injury-in-fact despite an allegation that the plaintiffs had incurred "actual damages including, but not limited to: anxiety, emotional distress, loss of privacy, and other

---

is what is relevant for the standing analysis. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987).  For example, Plaintiff alleges in Paragraph 58 that she and the class incurred damages associated with "the burden and cost of closing compromised accounts," but she does not allege that she actually ever closed a compromised account.

economic and non-economic harm"); *Allison v. Aetna, Inc.*, No. 09-2560, 2010 WL 3719243, at \*2 (E.D. Pa. Mar. 9, 2010) (finding no injury-in-fact despite the plaintiff's allegation that he "suffers anxiety, emotional distress, and loss of privacy").  Plaintiff has failed to allege an injury in fact sufficient to establish standing, and all of her claims must be dismissed.

## II.    Plaintiff's Complaint Fails To State A Claim.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court clarified the standard for determining whether a plaintiff has stated a claim upon which relief can be granted.  The Court held that a complaint must contain more than a simple "the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the plaintiff has failed to state a legally cognizable claim for relief, and dismissal is appropriate.  *Iqbal*, 556 U.S. at 679.  "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).  "[P]leadings offering only labels and legal conclusions couched as factual allegations enjoy no presumption of truth and offer no support to the sufficiency of the complaint."  *Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 821 (11th Cir. 2011).

### III.   Plaintiff's Statutory Claims Fail As A Matter Of Law.

A.   Plaintiff's claim for violation of the Federal Stored Communications Act must be dismissed.

Plaintiff's allegations fall far short of stating a claim under the SCA.  The SCA provides that "a person or entity providing an electronic communication service" or a "remote computing service" to the "public shall not knowingly divulge . . . the contents of a communication . . . ."  18 U.S.C. § 2702(a)(1)-(2). The SCA does not apply here because: (i) GP is not an "electronic communication service" or "remote computing service" provider; (ii) GP does not provide either service "to the public;" (iii) the data at issue is not the contents of a communication; and (iv) GP did not "knowingly divulge" any protected information.   Plaintiff's failure to plead any of these requisite elements requires dismissal of her SCA claim.

1.   GP is neither an "Electronic Communication Service" nor a "Remote Computing Service" provider.

"Electronic communication service" ("ECS") is defined as "any service which provides users thereof the ability to send or receive wire or electronic communications."  *U.S. v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003); 18 U.S.C. § 2510(15).  The Eleventh Circuit has explained that this definition applies to a "phone company, Internet Service Provider (ISP), or electronic bulletin board system."  318 F.3d at 1049.  A plaintiff's failure to allege that the defendant provided the internet or phone service through which the communication at issue

was sent requires dismissal of an SCA claim.  *In re Michaels Stores Pin Pad Litig.*, No. 11 C 3350, 2011 WL 5878373, at *3 (N.D. Ill. Nov. 23, 2011) ("the provider of an electronic communication service is the provider of the underlying service which transports the data, such as an internet service provider or a telecommunications company whose cables and phone lines carry internet traffic, and not the provider of a product or service which facilitates the data transport.")

Plaintiff does not allege that GP provides phone, internet, or interactive communication service.  The closest Plaintiff comes is alleging that GP "provides consumers with payment processing services that *enable* consumers to send wire or electronic communications."  (Compl. ¶ 63) (emphasis added).  But this is not enough to state an SCA claim.  Indeed, the *Michaels* court dismissed a nearly identical claim – that, "Michaels, through its PIN pads, *enables* consumers to pay with credit and debit cards and send or receive electronic communications concerning their account data and PINs to transaction managers, card companies, or banks."  *In re Michaels*, 2011 WL 5878373, at *3 (emphasis added).  The court reasoned that the PIN pad used to transfer the information is "a necessary tool for almost any retailer today" and that "Plaintiff's interpretation . . . would convert every single retailer using a PIN pad" into an ECS provider.  *Id.*

Plaintiff has likewise failed to allege facts sufficient to show that GP is a provider of "remote computing services" ("RCS").  The SCA defines RCS as "the provision to the public of computer storage or processing services by means of an

electronic communication system."   18 U.S.C. § 2711(2).   The SCA does not include a definition for RCS, but the statute's legislative history is instructive – a company provides RCS if it allows customers to use its computing facilities in "essentially a time-sharing arrangement" or furnishes a server that allows users to store data for future retrieval.   H.R. Rep. No. 99-647, at 23 (1986); *Steve Jackson Games, Inc. v. United States Secret Serv.*, 816 F. Supp. 432, 442-43 (W.D. Tex. 1993), *aff'd on other grounds*, 36 F.3d 457 (5th Cir. 1994).   There are no factual allegations in the Complaint sufficient to establish that GP is a provider of RCS.

### 2.    *GP does not provide service "to the public."*

Even if GP provides ECS or RCS (and it does not), it certainly does not provide either service to the public – an insurmountable obstacle to Plaintiff's SCA claim.   Although "public" is not defined in the SCA, its plain meaning is "'aggregate of the citizens' or 'everybody' or 'the people at large' or 'the community at large.'" *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1042 (N.D. Ill. 1998) (dismissing SCA claim because company email system from which the breach occurred was not available "to the public") (quoting Black's Law Dictionary, 1227 (6th ed. 1990)).

Plaintiff quotes the language of the SCA in alleging that GP provides ECS and RCS to the public.   (Compl. ¶¶ 63, 68).   Simply parroting a statute's provisions is insufficient to state a claim under the SCA, and Plaintiff does not allege any facts that make plausible the claim that GP provides services to the public.   Indeed,

Plaintiff hinges her SCA claim on the idea that GP provides service to the public "by virtue of its payment processing services for consumer credit and debit card payments . . . ."  (Compl. ¶¶ 63, 68).  But Plaintiff's own allegations reveal that GP does not provide those services to the public – Plaintiff alleges in detail that "Global Payments Inc. is a provider of electronic transaction processing services *for merchants, Independent Sales Organizations (ISOs), financial institutions, government agencies and multi-national corporations.*"  (Compl. ¶ 2) (emphasis added).  This specific, factual allegation undercuts all of Plaintiff's vague attempts to cast GP as a provider of service to the public.

Plaintiff attempts to avoid this problem by alleging in conclusory fashion that GP "stores personal and financial information *on behalf of the public*." (Compl. ¶ 68).  That GP may possess certain information relating to the customers of GP's merchant customers by virtue of the fact that the merchant uses GP to process credit card transactions does not mean that GP provides any services to the merchant's customers – much less that GP provides any services to the *public* as the SCA requires.

> ### 3. The transactional data at issue is not the "contents of a communication."

Plaintiff's SCA claim also fails because the data that GP possesses as a result of the credit card transactions it processes does not constitute the "contents of a communication," as the SCA requires.  The legislative history and cases cited above explain that internet service providers and phone companies are ECS and

RCS providers because these types of companies, unlike GP, deal with the transfer and storage of the contents of actual *communications* such as email and phone calls. The SCA requires different levels of protection for different types of information and specifically carves out from liability the disclosure of transactional or record data to non-governmental entities. *See* 18 U.S.C. § 2702(c). Courts have recognized this clear distinction. *Hill v. MCI Worldcom Commc'ns, Inc.*, 120 F. Supp. 2d 1194, 1195 (S.D. Iowa 2000) (rejecting argument that invoice/billing information qualified as "contents" under the SCA and dismissing claim.); *see also In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 306-07 (3d Cir. 2010) (clarifying the difference between content and transactional data).

Here, the type of claims Plaintiff attempts to allege under 18 U.S.C. § 2702 require GP to have knowingly divulged the "contents of a communication." (Compl. ¶¶ 61, 65). Instead, Plaintiff alleges only that "customer credit and debit account information" was divulged. (Compl. ¶¶ 64, 69). This type of information is not the contents of a communication but, at most, transactional or record information and Plaintiff's claim therefore must fail.

       4.    *Plaintiff does not allege that GP knowingly divulged any protected communications.*

Finally, Plaintiff does not allege the requisite intent under the SCA. The SCA only prohibits knowingly divulging the contents of protected information. 18 U.S.C. § 2702(a)(1)-(2). The legislative history is clear that the term "knowingly" imposes a high scienter requirement:

> The term knowingly means that the defendant was aware of the nature of the conduct, aware of or possessing a firm belief in the existence of the requisite circumstances and an awareness of or a firm belief about the substantial certainty of the result. The conduct in question is the act of disclosure.

H.R. Rep. No. 99-647, at 64 (1986). Plaintiff does not allege any facts suggesting that GP knowingly divulged any protected information. Indeed, Plaintiff premises her SCA claim on the allegation that GP failed to "take commercially reasonable steps to safeguard" the data. (Compl. ¶ 68). Courts have uniformly rejected the argument that this very allegation is sufficient to satisfy the SCA's intent requirement. *See Worix v. MedAssets, Inc.*, No. 11 C 8088, 2012 WL 1419257, at *2-3 (N.D. Ill. Apr. 24, 2012) (upholding dismissal of SCA claim based solely on a lack of intent because "the failure to take reasonable steps to safeguard data, which was all [plaintiff] had alleged does not, without more, amount to divulging that data knowingly or with willful blindness.") (internal quotations omitted); *Muskovich v. Crowell*, No. 3–95–CV–20007, 1996 WL 707008, at *5 (S.D. Iowa Aug. 30, 1996) (allegation that failure to implement safeguards had resulted in data breach did not satisfy the "knowingly divulge" requirement because "[a]wareness

of a 'possibility' does not rise to the level of a 'substantial certainty' required for liability under the [SCA]"); *Freedman v. Am. Online, Inc.*, 329 F. Supp. 2d 745, 749 (E.D. Va.2004) (SCA requires a plaintiff to show that "defendant was aware, or possessed a firm belief, that his act would result in . . . disclosure."). Plaintiff's failure to allege the essential elements of an SCA claim requires dismissal of the claim.

    B.    <u>Plaintiff's claims for willful and negligent violation of the FCRA must be dismissed.</u>

To support her claims for negligent and willful violations of the FCRA, Plaintiff must allege facts establishing that the FCRA applies to GP.  To do so, Plaintiff must establish that GP is a "consumer reporting agenc[y]" providing "consumer report[s]."  *See* 15 U.S.C. § 1681b.  Plaintiff's claim must be dismissed because she has failed to allege facts to support either proposition.[3]

_____

[3] Plaintiff's claim for willful breach of the FCRA should also be dismissed because Plaintiff has not pled any facts to support her claim that GP willfully violated the statute.  A defendant willfully violates the FCRA "if the defendant violates the terms of the [FCRA] with knowledge or reckless disregard for the law."  *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009).  Here, Plaintiff alleges that GP's alleged "failure to adopt and maintain reasonable procedures in compliance with the FCRA was willful."  (Compl. ¶ 78).  Even assuming that GP could have violated the FCRA in the manner alleged, Plaintiff has not alleged any facts showing that GP knowingly violated the FCRA.  Nor has Plaintiff alleged any facts that would establish a reckless disregard of the FCRA.  Simply alleging that conduct is willful does not make it so.

> 1. *Plaintiff has not alleged any facts to support her claim that GP is a consumer reporting agency.*

A "consumer reporting agency" is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).  Even assuming Plaintiff properly alleged that GP satisfies all of the other requirements for being a consumer reporting agency (and she has not), Plaintiff has not alleged any facts to support her boilerplate allegation that GP engaged in the practice of "assembling or evaluating" consumer credit or other consumer information.   (*See* Compl. ¶ 74 (parroting FCRA's definition of "consumer reporting agency" without any factual support)). Plaintiff's FCRA claims must therefore be dismissed.

The Complaint includes detailed allegations by Plaintiff as to how GP does business.  Those allegations make clear that GP only *transmits* data: "The retailer sends the consumer's information to the merchant acquirer, such as GP, who then forwards that information to Visa, Mastercard, or another issuer, who clears the transaction with the consumer's bank."  (Compl. ¶ 18).  Plaintiff does not allege that GP in any way assembles or evaluates the information it receives and transmits.

Courts have routinely held that simply transmitting information to another party does not constitute assembling or evaluating that information.  *DiGianni v.*

*Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) ("assembling and evaluating consumer credit information . . . implies a function which involves more than receipt and retransmission of information identifying a particular debt[]"); *Ori v. Fifth Third Bank*, 603 F. Supp. 2d 1171 (E.D. Wis. 2009) (entity that provided various services, including transaction processing, did not assemble or evaluate information when it served as a conduit for transmitting information about mortgages for a bank); *Knechtel v. Choicepoint, Inc.*, Civil No. 08-5018, 2009 WL 4123275, at **3-4 (D.N.J. Nov. 23, 2009) (entity was not a credit reporting agency where it only "pass[ed] information on to other parties that assemble and evaluate it"); *see also Rush v. Macy's N.Y., Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985) (department store was not a consumer reporting agency when it merely furnished information to a credit reporting agency).

In a similar case, *Ori v. Fifth Third Bank*, the court dismissed just such a claim.   In *Ori*, the Plaintiff alleged that FISERV – a company that performed transaction processing among other functions – violated the FCRA by transmitting a bank's mortgage documents to consumer reporting agencies.  603 F. Supp. 2d at 1173.   The Court dismissed the plaintiff's claim, finding that "[o]btaining and forwarding information does not make an entity a CRA."  *Id.* at 1175.   Here, Plaintiff has alleged nothing more than that GP is an entity that obtains and forwards certain information.   Plaintiff therefore has not alleged GP is a consumer reporting agency, and her FCRA claim must be dismissed.

　　　2.　　*The information GP transmits does not constitute a consumer report.*

The FCRA generally defines a consumer report as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).  Although not entirely clear from the Complaint, Plaintiff appears to claim that the information allegedly obtained from GP – cardholder names and account numbers – is information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."  (Compl. ¶¶ 8, 73).

Courts have held, however, that information of this sort does not constitute a consumer report because it does not bear on any of the enumerated factors.  *Smith v. Waverly Partners, LLC*, No. 3:10–CV–28, 2011 WL 3564427, at *5 (W.D.N.C. Aug. 12, 2011) ("name, Social Security Number, prior addresses, date of birth, and driver's license information" did not bear on these factors); *In re Nw. Airlines Privacy Litig.*, No. Civ.04-126, 2004 WL 1278459, at *1, *3 (D. Minn. June 6, 2004) (records containing information, including "name, flight number, credit card data, hotel reservation, car rental, and any traveling companions" did not constitute

a consumer report); *Dotzler v. Perot*, 914 F. Supp. 328, 330 (E.D. Mo. 1996) (name, address and social security number did not bear on factors).  In sum, although names and account numbers potentially can be used to identify additional information that bears on the relevant factors, names and account numbers themselves do not bear on those factors and do not constitute consumer reports.

The information GP allegedly transmits also does not constitute a consumer report because it is used as part of credit card (and similar) transaction processes – processes that are explicitly exempted from the definition of a consumer report. The definition of consumer report expressly excludes "any authorization or approval of a specific extension of credit *directly or indirectly* by the issuer of a credit card or similar device[.]"  15 U.S.C. § 1681a(d)(2)(B) (emphasis added).  A Federal Trade Commission report commenting generally on this provision notes that the exemption means that "[a] credit or debit card issuer's written, oral, or electronic communication of its decision whether to authorize a charge, in response to a request from a merchant or any other party the consumer has asked to honor the card, is not a 'consumer report.'"  40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations at 25 (July 2011), *available at* http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

But the exemption on its face is broader than the one example the FTC discusses.  As worded, it covers the *process* of deciding whether to approve a credit card or similar transaction; it is not limited to only the credit card issuer's

actual decision or to information conveyed by the issuer.  If it was, Congress could have drafted the statute to provide that a credit card (or similar) issuer's decision about whether to approve a particular transaction does not constitute a consumer report.  Instead, the provision focuses on the process and those who participate in that process either "directly or indirectly."

Plaintiff alleges that GP participates in the process of processing credit card and similar transactions.  (Compl. ¶ 18).  An issuer's transmission of its decision whether to authorize a particular charge does not constitute a consumer report under Section1681a(d)(2)(B).  That same information does not suddenly become a consumer report when GP further transmits it.  Plaintiff's FCRA claim must fail.[4]

C.    Plaintiff's claim for violations of Georgia's Unfair And Deceptive Trade Practices Act must be dismissed.

Plaintiff claims that GP violated the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A § 10-1-372, *et seq*., by misrepresenting: (i) the "standard and quality" of its services; and (ii) "the characteristics, ingredients, uses, and benefits" of its services.  (Compl. ¶¶ 94-95).  Plaintiff's UDTPA claim fails for three reasons.  First, Plaintiff – a Kansas citizen – cannot assert a Georgia

---

[4] Plaintiff's FCRA claim for negligent violation of that statute also must fail because it requires proof of actual damages sustained by Plaintiff as a result of a violation of the statute.  *See* 15 U.S.C. § 1681o(a)(1).  Plaintiff posits that GP violated FCRA by failing to safeguard the security of her personal information. (Compl. ¶¶ 83-84.)  But, as set forth in Section I hereto, Plaintiff does not allege that she suffered any cognizable damages as a result of GP's alleged conduct, nor does she allege a causal link between GP's conduct and the damages she alleges.

UDTPA claim.  Second, Plaintiff has not pled any facts to support her substantive allegations regarding GP's alleged misrepresentations.   Third, UDTPA provides only for injunctive relief to prevent future harm, and Plaintiff has failed to allege any future harm that could be redressed by an injunction against GP.  Plaintiff's UDTPA claim must therefore be dismissed.

### 1.    *Plaintiff cannot assert a UDTPA claim.*

As an initial matter, Plaintiff's UDTPA claim must fail because Plaintiff cannot sue under the UDTPA, which is a statute sounding in tort.  Specifically, Georgia's tort choice of law rule prevents Plaintiff from asserting a claim under the UDTPA because Plaintiff's alleged injury occurred in Kansas.

Georgia law defines a tort as "the unlawful violation of a private legal right other than a mere breach of contract, express or implied."  O.C.G.A. § 51-1-1. Statutes, such as the UDTPA, can give rise to tort claims.  *See White v. City of Atlant*a, 545 S.E.2d 625, 627 (Ga. Ct. App. 2001) (noting statutes can give rise to tort claims).   And, here, Plaintiff sues for alleged misrepresentations under the UDTPA, which are tort – not contract – claims.  (Compl. ¶¶ 94-95).

Georgia applies the *lex loci dilicti* rule to tort claims.  *Garland v. Advanced Med. Fund, L.P.*, 86 F. Supp. 2d 1195, 1204-05 (N.D. Ga. 2000).  Under this rule, a court applies the substantive law of the place where the alleged tort occurred. *Int'l Bus. Machs. v. Kemp*, 536 S.E.2d 303, 306 (Ga. Ct. App. 2000).  A tort occurs where the injury is sustained.  *See, e.g., Mullins v. M.G.D. Graphics Sys. Corp.*,

867 F. Supp. 1578, 1580 (N.D. Ga. 1994); *Wardell v. Richmond Screw Anchor Co.*, 210 S.E.2d 854, 856 (Ga. Ct. App. 1974).  Because Plaintiff is a resident of Kansas, her injury is deemed to have occurred in Kansas, and Kansas law applies to her tort claims.  *See Mullins*, 867 F. Supp. at 1580; *Wardell*, 210 S.E.2d at 856.

Under similar circumstances, the Eleventh Circuit has held that a Georgia plaintiff could not sue under an Illinois tort-based statute where the plaintiff's alleged injury occurred in Georgia, not Illinois.  *Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409-10 (11th Cir. 1998).  The same result should apply here, and Plaintiff's UDTPA claim should be dismissed.

2.   *Plaintiff has pled no facts to support her UDTPA claim.*

Plaintiff appears to allege that GP violated Sections 372(a)(5) and 372(a)(7) of UDTPA.[5]  (Compl. ¶¶ 94-95).  Plaintiff, however, has not alleged any facts to

---

[5] Plaintiff also appears to allege that GP violated UDTPA by "failing to properly implement adequate, commercially reasonable security measures to protect consumers [*sic*] sensitive PII" and by "failing to immediately notify affected customers of the nature and extent of the security breach" under Georgia and other states' laws.  (Compl. ¶¶ 92-93).  UDTPA, however, only outlaws the twelve enumerated actions listed in the statute.  O.C.G.A § 10-1-372(a)(1-12).  Although the UDTPA does not displace any other common law or statutory claims for deceptive trade practices, it does not create any additional rights beyond what is outlined in the statute.  O.C.G.A. § 10-1-372(a) & (c); *Med S. Health Plans, LLC v. Life of S. Ins. Co.*, No. 4:07-CV-134, 2008 WL 2119915, at *8 (M.D. Ga. May 19, 2008) (rejecting UDTPA claims that did not fall within the twelve enumerated categories).  Plaintiff's allegations in paragraphs 92 and 93 do not fall within the twelve enumerated categories.  These claims thus fail as a matter of law.  Moreover, as discussed further in this section, these claims also fail because Plaintiff does not allege any future harm arising from them or allege any facts to support these claims.

support these claims.   In particular, Plaintiff does not allege any specific representations that GP made to her regarding *any* "particular standard and quality" related to its services or the "characteristics, ingredients, uses and benefits" of its services – much less a misrepresentation.   For this reason alone, Plaintiff's UDTPA claim must fail.   *Morton v. Suntrust Mortg., Inc.*, No. 1:10-CV-2594, 2010 WL 5055822, at *7 (N.D. Ga. Nov. 5, 2010) (dismissing UDTPA claim when plaintiff simply parroted the allegedly relevant UDTPA provisions without any supporting factual allegations).

Plaintiff also has not alleged any facts to support her claim that the (unidentified) representations that GP supposedly made were false.   To show that GP misrepresented that it would "properly implement adequate, commercially reasonable security measures" to protect Plaintiff's PII or that it would "establish adequate safeguards" to protect or maintain Plaintiff's PII, Plaintiff must allege that GP failed to do these things.   (*See* Compl. ¶¶ 94-95).   Plaintiff has only alleged that an "unauthorized third party" accessed GP's payment system.   (*E.g.*, Compl. ¶ 3).   That allegation alone, however, does not lend plausibility to Plaintiff's allegation that GP failed to take adequate security measures or establish adequate safeguards.   Indeed, it is equally plausible that GP took adequate, commercially reasonable measures to protect the data it transmits, and a criminal third-party was still able to access GP's system.   To plausibly allege that GP made a misrepresentation (in addition to showing that GP made a representation, which it

- 27 -

did not), Plaintiff would have to allege *what* security measures and safeguards GP took and *how* those security measures and safeguards differed from what GP said they would be. *See Vie v. Wachovia Bank, N.A.*, Civil Action No. 1:11–CV–3620–RWS, 2012 WL 1156387, at *3 (N.D. Ga. Apr. 6, 2012) (dismissing UDTPA claim where plaintiff failed to plead facts to "support a plausible violation of the Act"). She has done neither and her claim must therefore be dismissed.

### 3. *Plaintiff has failed to allege future harm warranting an injunction against GP.*

UDTPA does not authorize monetary relief; only injunctive relief is available. *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002). To obtain an injunction, Plaintiff must establish she is "likely to be damaged" by GP's deceptive trade practice in the future. O.C.G.A. § 10-1-373 (a); *Vie*, 2012 WL 1156387; *Morton,* 2010 WL 5055822, at *7 n.14. Plaintiff must also show that the injunction she seeks will prevent future harm. *See e.g.*, *Vie*, 2012 WL 1156387, at *3.

Here, Plaintiff's UDTPA claim fails because she has not alleged any future harm that an injunction would prevent. Indeed, Plaintiff alleges only past misrepresentations. (Compl. ¶¶ 94-95). Whatever harm Plaintiff claims to have suffered from GP's alleged misrepresentation occurred entirely in the past. *Catrett*, 560 S.E.2d at 106 ("By definition, an injunction provides relief from *future* wrongful conduct: '[t]he remedy by injunction is to prevent, prohibit or protect from future wrongs and does not afford a remedy for what is past.'").

Assuming Plaintiff's PII was even compromised – a huge and unsubstantiated assumption given the complete lack of any complaint allegations on this point – the data theft occurred in the past and an injunction will do nothing to change it. *Id.* (noting that an injunction would not remedy a past misrepresentation).

Plaintiff also has not alleged facts showing that she is "likely to be damaged" by any alleged ongoing misrepresentations. To allege future harm from an ongoing misrepresentation, Plaintiff would have to allege, at a minimum, that: (i) the alleged security flaws still exist; (ii) another breach would occur; (iii) Plaintiff's information would be compromised as part of that breach; and (iv) Plaintiff's information compromised in the second hypothetical breach would be different from the information allegedly compromised in the first breach. Only then would Plaintiff potentially suffer future harm. Such allegations – even if Plaintiff had made them (and she has not) – would be far too speculative to support a claim for injunctive relief. *Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691, 695 (11th Cir. 2010) (affirming district court's dismissal of plaintiff's UDTPA claim where plaintiff alleged only "hypothetical future harm."); *Friedlander v. HMS-PEP Prods., Inc.*, 485 S.E.2d 240, 241-42 (Ga. Ct. App. 1997) (rejecting argument that speculative future harm could support a UDTPA claim). Plaintiffs' UDTPA claim thus fails and should be dismissed. *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1292 (S.D. Ga. 2010) (dismissing UDTPA claim where plaintiffs did not allege they would be "damaged in the future

absent an injunction . . . much less allege how they [would] be damaged.")
(emphasis omitted).

## IV.   Plaintiff's Tort Claims Must be Dismissed.

### A.   Plaintiff's negligence claim must be dismissed.

Given the complete absence of a relationship between Plaintiff and GP, Plaintiff cannot establish any duty that GP has breached, nor can she establish a legally cognizable injury caused by any GP conduct.  Thus, under any state's law, Plaintiff could not state a negligence claim against GP.  This Memorandum analyzes Kansas law, which applies to Plaintiff's claim.[6]  To establish negligence under Kansas law, Plaintiff must prove that: (i) GP owed her a duty of care and breached that duty; (ii) Plaintiff suffered a legally cognizable injury; and (iii) GP's

---

[6] In a case based upon diversity of citizenship jurisdiction, a federal court must apply the choice of law rules of the forum state in which it sits. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  Georgia follows the *lex loci delicti* choice of law rule for tort claims, *see, e.g., Garland*, 86 F. Supp. 2d at 1204-05, which requires courts to apply the substantive law of the place where the alleged tort occurred. *Kemp*, 536 S.E.2d at 306.  A tort occurs where the injury is sustained. *See, e.g., Mullins*, 867 F. Supp. at 1580; *Wardell*, 210 S.E.2d at 856.  Because Plaintiff is a resident of Kansas, her injury is deemed to have occurred in Kansas, and Kansas law applies to her negligence claim. *See Mullins*, 867 F. Supp. at 1580; *Wardell*, 210 S.E.2d at 856.  Even if Georgia law applied, Plaintiff has failed to state a negligence claim. *See generally Samuelson v. Lord, Aeck & Sergeant, Inc.*, 205 Ga. App. 568, 572 (1992) ("It is well established that 'the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.'") (quoting *Robertson v. MARTA*, 199 Ga. App. 681, 681-82 (1991)); *see also Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.*, 713 F.2d 1500 (11 Cir. 1983) (noting confusion in Georgia choice of law rules when laws of thirteen original colonies may apply).

breach of duty was the proximate cause of Plaintiff's injury.  *D.W. v. Bliss*, 112 P.3d 232 (Kan. 2005).  Plaintiff has failed to allege any facts that would support the existence here of a duty of care from GP to Plaintiff, and her negligence claim must be dismissed on that basis.[7]

Plaintiff does not allege that she has a contract with GP, that she paid GP any money in exchange for a service, or that she transacted any business at all with GP.  Kansas courts have held that businesses do not have a generalized duty to protect non-patrons from harm, particularly when such harm is caused by third-party actors.  *See generally Gardin v. Emporia Hotels, Inc.*, 61 P.3d 732 (Kan. Ct. App. 2003).  In addition, there is no Kansas case in which a court has held that

---

[7] As fully articulated in Section I.A of this Memorandum, Plaintiff has made no meaningful attempt to allege any connection between the data theft GP experienced and any alleged injuries of the Plaintiff.  Proximate cause is an essential element of any negligence claim and requires that there be causal connection between the duty that was breached and the alleged injury.  *D.W.*, 112 P.3d at 238.  Furthermore, there is no general obligation of a party to control the actions of a third-party in order to prevent harm to another, *South ex rel. South. v. McCarter*, 119 P.3d 1 (Kan. 2005), and an intervening criminal act can break the chain of causation in a claim of negligence.  *Citizens State Bank v. Martin*, 609 P.2d 670 (Kan. 1980).  Plaintiff has failed to allege any direct connection between the GP data theft and any alleged losses.  Moreover, even if Plaintiff had sufficiently alleged a connection between GP's data breach and her alleged injuries, it would have been the criminal acts of a third-party, and not any purported negligence of GP, which caused such injuries.  For this additional reason, Plaintiff's negligence claim should be dismissed.

credit card processors owe consumers the sort of generalized duty to safeguard data that Plaintiff asserts in the Complaint.[8]

Outside Kansas, numerous courts have held that there is no duty of care in circumstances similar to this case.  In *Hammond*, plaintiffs brought a putative class action asserting that the defendant bank had negligently failed to secure their personal information.  2010 WL 2643307, at *1-3.  The *Hammond* Court held that dismissal of the plaintiffs' negligence claim was appropriate because the plaintiffs:

> [Could not] establish that Defendant owed them any duty.  None of the named Plaintiffs had any direct dealings with Defendant. . . . Plaintiffs had relationships (only) with institutional clients of Defendant . . . .  Plaintiffs gave their personal data over to those entities, which, in turn, forwarded the data to Defendant (which stored the data on the tapes that ultimately were lost or stolen).

*Id.* at 9 (internal citations omitted); *see also Worix,* 2012 WL 1419257, at *3-6 (denying a motion to amend a claim of negligence in connection with a data breach on the grounds that, even under the amended claim, the defendant had no common law duty to protect the plaintiff's personal information from disclosure).

---

[8]  Moreover, Plaintiff premises her negligence claim on GP's alleged failure to prevent the theft of data by a third party.  But, "[t]he prevailing rule in Kansas is that in the absence of a 'special relationship' there is no duty on a person to control the conduct of a third person to prevent harm to others."  *South ex rel. South v. McCarter*, 119 P.3d 1 (Kan. 2005).  Although the Kansas Supreme Court has articulated numerous situations in which a "special relationship" exists, *id.*, none of them is applicable in this case.  *See generally Shirley v. Glass*, 241 P.3d 134 (Kan. Ct. App. 2010).

Plaintiff has alleged an even more tenuous connection to GP than that which the *Hammond* Court found insufficient to state a claim.  Plaintiff has not even alleged that she used her credit card at a merchant that uses GP to process its transactions.  Plaintiff's failure to allege any link between her and GP precludes any finding of duty here, and Plaintiff's negligence claims must be dismissed.

Plaintiff has also failed to establish the other elements of a negligence claim – that she suffered a legally cognizable injury and that GP proximately caused that injury.  As discussed at length above in Section I.B of this Memorandum, Plaintiff has failed to allege an injury-in-fact sufficient to establish standing in this case.  Plaintiff likewise has failed to allege a cognizable injury sufficient to state a claim for negligence.  Kansas has never recognized a cause of action for negligence based on injuries such as increased risk of identity theft, cost of mitigation efforts to prevent identity theft, or anxiety, emotional distress, or loss of privacy in connection with exposure of PII. *See generally McKissick v. Frye*, 876 P.2d 1371, 1389 (Kan. 1994) ("[r]ecovery may not be had [in a negligence action] where the alleged damages are too conjectural or speculative to form a basis for measurement"); *Ware ex rel. Ware v. ANW Special Educ. Co-op. No. 603*, 180 P.3d 610 (Kan. Ct. App. 2008) (plaintiff cannot recover for negligent infliction of emotional distress without showing physical injury).  Consistent with this approach, numerous courts have held that such injuries are not sufficient to state a claim for negligence in a data breach case. *See Pisciotta v. Old Nat'l Bancorp*, 499

F.3d 629, 640 (7th Cir. 2007) (refusing to invent a "truly novel tort claim" under Indiana law that would allow a plaintiff to recover for increased risk of future identity theft and out-of-pocket costs for mitigation efforts); *Krottner v. Starbucks Corp.*, 406 F. App'x. 129, 131 (9th Cir. 2010) (affirming dismissal of the plaintiff's negligence claim because the plaintiff had not established a cognizable injury under Washington law); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1054-55 (E.D. Mo. 2009) (applying Missouri law); *Hammond*, 2010 WL 2643307, at *9. Like the plaintiffs in these past data breach cases, Plaintiff has not alleged sufficient injury to state a claim for negligence.[9]

Plaintiff has also utterly failed to establish causation for the reasons set forth more fully in Section I.A of this Memorandum. For all of these reasons, Plaintiff's negligence claim should be dismissed.

B.   Plaintiff's negligence per se claim must be dismissed.

Under Kansas law, to state a claim for negligence per se, Plaintiff must allege: (i) a violation of a statute, ordinance, or regulation; (ii) which violation is the cause of the damages resulting therefrom; and (iii) that an individual right of action for injury arising out of the violation was intended by the legislature. *Pullen*

---

[9] Even if this Court finds that Plaintiff has established standing, that does not mean that Plaintiff has adequately pled damages for purposes of her state law claims. *See Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (plaintiff may suffer Article III injury and still not plead a proper cause of action).

*v. West,* 92 P.3d 584, 593 (Kan. 2004).[10]  Plaintiff's claim stumbles at the outset because she cannot establish that GP violated any of the statutes on which she bases her negligence per se claim.  *See* Section III of this Memorandum.  Second, as set forth in Section I.B of this Memorandum, Plaintiff fails to allege any damages, let alone damages caused by violations of the statutes.  Accordingly, Plaintiff's negligence per se claim must be dismissed.

## V.    **Plaintiff's Contract-Based Claims Also Fail.**

   A.    Plaintiff's claim for breach of third-party beneficiary contract must be dismissed.

Plaintiff alleges that she is the third-party beneficiary of an unspecified "Processing Contract" between GP and unidentified "merchants, banks, and other card issuing entities."  (Compl. ¶ 107).  Plaintiff alleges in the most conclusory fashion imaginable that this unknown contract between unidentified parties requires in some unspecified way that GP not disclose Plaintiff's PII to unauthorized third party entities and that GP safeguard her PII from being stolen.  Under either Kansas or Georgia law, Plaintiff's claim fails as a matter of law because Plaintiff has not and cannot properly allege that the parties intended for her to be a beneficiary of the unidentified contracts under which she seeks to sue.[11]

---

[10] Georgia has similar elements for negligence per se.  *See Hubbard v. Dep't of Transp.*, 568 S.E.2d 559, 567 (Ga. Ct. App. 2002).

[11] Because Plaintiff, a citizen of Kansas, is suing a Georgia corporation, there are threshold choice-of-law issues that must be resolved prior to analysis of the quasi-contract claims.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) (a federal court sitting in diversity is to apply the choice of law rules of the forum

For a third party to bring a breach of contract claim, that party must be an intended beneficiary of the contract.  *See State ex rel. Stovall v. Reliance Ins. Co.,* 107 P.3d 1219, 1231 (Kan. 2005) (state was not an intended third-party beneficiary of a subcontract); O.C.G.A. § 9-2-20(b) (only "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.").  The key inquiry is whether the *contract itself* expresses the intent of the parties that a third person receive a direct benefit.  *See Stovall,* 107 P.3d 1219, 1231-32 (Kan. 2005) (third party must show the existence of some provision in the contract that operates to his benefit); *Scott v. Mamari Corp.*, 530 S.E.2d 208, 211 (Ga. Ct. App. 2000) ("it must clearly appear from the contract that it was intended for his benefit").  The mere fact that the third party would benefit incidentally from performance of the agreement is not sufficient absent clear contractual intent.  *Martin v. Edwards,* 548 P.2d 779, 785 (Kan. 1976) ("a mere incidental, collateral, or consequential benefit which may accrue to a third person by reason of the performance of contract, or the mere fact that he has been injured by the breach thereof, is not sufficient to enable him to maintain an action on the contract."); *Starrett v. Commercial Bank of Ga.,* 486 S.E.2d 923 (Ga. Ct. App.

---

state); *Convergys Corp. v. Keener*, 582 S.E.2d 84, 86 (Ga. 2003) (in contract actions, Georgia follows the traditional *lex loci contractus* approach).  Here, Plaintiff's bare bones allegations, which fail to identify the contracts at issue or *inter alia* where they were made, make it impossible to conduct such an analysis. Accordingly, this Memorandum analyzes both Kansas and Georgia law. Depending on the terms of the actual contracts at issue, it is also possible another state's law would apply.

1997).   The burden of establishing standing to bring suit as a third-party beneficiary rests with the party asserting it.  *See Stovall,* 107 P.3d at 1230.

Here, Plaintiff has not identified a specific contract by which she can claim third party beneficiary status.  Likewise, Plaintiff has not even alleged that GP intended Plaintiff to be a third-party beneficiary of any contract between GP and any issuing bank, merchant, or card association.  Finally, Plaintiff does not identify any contractual language that reflects an intent to confer third party beneficiary status upon her.  These failures require dismissal of her claim.  *See Lone Star Nat'l Bank, N.A. v. Heartland Bank,* Order on Motion to Dismiss, Civil Action No. H-10-171 (S.D. Tex. Mar. 31, 2011 (attached hereto as Ex. B) (dismissing third party beneficiary claim in data breach case).

Accordingly, Plaintiff does not and cannot allege that the purported contract expresses the required intent that she receive a direct benefit from the contract.  And, any alleged generalized intent to protect customer data is insufficient to qualify Plaintiff as a third-party beneficiary as a matter of law.[12]   *See Byers v. Snyder*, 237 P.3d 1258, 1266 (Kan. Ct. App. 2010) (when contract is made for general benefit, members of the public are generally not considered third-party beneficiaries with standing to sue); *Anderson v. Atlanta Comm. for Olympic Games, Inc.*, 537 S.E.2d 345 (Ga. 2000) (park visitors were not third-party

---

[12] Similarly, as explained more fully in Section I.B, Plaintiff cannot allege any actual damages proximately caused by GP's conduct as required to maintain a cause of action for breach of third-party beneficiary contract.

beneficiaries of security services contracts with local Olympic committee); *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 442 F. Supp. 2d 206, 211 (M.D. Pa. 2006) (denying third party beneficiary claims alleging breach of merchant agreement between issuing bank and merchant after security breach).   In sum, Plaintiff's third-party beneficiary allegations fail to raise any alleged right to relief above a speculative level and must therefore be dismissed.  *See Twombly*, 550 U.S. at 555; *see also Steadfast Ins. Co. v. Corp. Prot. Sec. Grp., Inc.*, 554 F. Supp. 2d 1335, 1339 (S.D. Fla. 2008) (dismissing third-party beneficiary claim under the *Twombly* standard).

      B.    Plaintiff's claim for breach of implied contract must be dismissed.

Plaintiff alleges that she and GP entered into an implied contract that obligated GP to reasonably secure her PII when it accepted her PII as part of a payment transaction.   (Compl. ¶¶ 115-117).   Plaintiff's claim fails because the Complaint is devoid of any allegation indicating that the she and GP ever reached an agreement with each other or otherwise had a meeting of the minds.   Indeed, although Plaintiff premises her claim on her provision of PII to GP (*see* Compl. ¶ 114), Plaintiff did not ever provide her PII to GP.  Rather, as Plaintiff alleges in the Complaint, Plaintiff provided her PII to a merchant who in turn provided it to GP.  (Compl. ¶ 18).

As with any other contract, an implied-in-fact contract requires the parties'

mutual intent to enter an agreement.[13]  *See Mai v. Youtsey*, 646 P.2d 475 (Kan. 1982); *Eaves v. J.C. Bradford & Co., Inc.*, 326 S.E.2d 830, 832 (Ga. Ct. App. 1985).   Plaintiff pleads no basis from which mutual intent may be inferred. Although a contract's existence may be implied from the parties' conduct, one party's unilateral understanding does not suffice.[14]  *Brokaw v. Board of Cnty. Comm'rs of Cnty. of Shawnee Cnty.*, 247 P.3d 235 (Kan. Ct. App. 2011); *Eaves*, 326 S.E.2d at 832; *see also Krottner*¸ 406 F. App'x 129 (no implied contract to safeguard data absent allegation that plaintiff read and relied on policy); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199-1200 (D.N.D. 2004) (policy posted on a website cannot constitute a contract with a customer in the absence of an allegation that the customer read and relied on the policy).  And Plaintiff pleads absolutely no basis for finding an intent on GP's part to contract with Plaintiff. Her implied contract claim should be dismissed.

---

[13] As set forth in note 11 above, Plaintiff's vague allegations make it impossible to conduct a choice of law analysis regarding this claim.   Accordingly, this Memorandum analyzes both Kansas and Georgia law.

[14] Although a contract can also be implied in law, the Complaint suggests only an implied in fact contract and does not identify any specific laws by which such a contract could be implied.  *See Mai v. Youtsey,* 646 P.2d 475, 478 (Kan. 1982) (contract implied in law is a legal fiction created to prevent unjust enrichment).

## **CONCLUSION**

For the reasons stated above and on the authorities cited, GP respectfully submits that Plaintiff's Complaint must be dismissed in its entirety.

May 14, 2012

/s/ Kristine McAlister Brown
Kristine McAlister Brown
Georgia Bar Number 480189
kristy.brown@alston.com
Stephanie B. Driggers
Georgia Bar Number 141231
stephanie.driggers@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000

Attorneys for Defendant,
Global Payments Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of May, 2012, a copy of the

foregoing **DEFENDANT GLOBAL PAYMENTS, INC.'S MEMORANDUM**

**IN SUPPORT OF MOTION TO DISMISS** was served via electronic filing,

upon all attorneys of record, including:

> Justin D. Miller, Esq.
> Morgan & Morgan, P.A.
> 191 Peachtree Street, NE, Suite 4200
> Atlanta, GA 30303-1748
>
> J. Andrew Meyer, Esq.
> Tamra Givens, Esq.
> Rachel Soffin, Esq.
> Morgan & Morgan, P.A.
> 201 North Franklin Street, 7th Floor
> Tampa, FL 33602
>
> Scott Wm. Weinstein, Esq.
> Morgan & Morgan, P.A.
> 12800 University Drive, Suite 600
> Fort Myers, FL 33907-5337

/s/ Kristine McAlister Brown